IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-387-CR





WALTER RAY PYRON,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 83-157-K, HONORABLE WILLIAM S. LOTT, JUDGE PRESIDING



 




 On September 13, 1983, appellant, a physician, was convicted of indecency with
a child and, pursuant to a plea bargain agreement, sentenced to imprisonment for ten years. 
Appellant served the time required for shock probation, execution of the sentence was suspended,
and appellant was placed on probation. On May 12, 1992, after hearing the second amended
motion to revoke probation, the trial court entered an order to revoke. Appellant appeals from
that order. We will affirm the trial court's order.

 Appellant presents fourteen points of error which are shown in the appendix to this
opinion. Before stating and discussing his points of error, appellant expressed the standards of
review which, in his opinion, should be applied. Appellant acknowledges the "abuse of
discretion" standard which has been universally applied by appellate courts in reviewing
revocation of probation orders. Flournoy v. State, 589 S.W.2d 705, 709 (Tex. Crim. App. 1979).

 Appellant also asserts that Tex. R. App. P. 81(b)(2) requires that appellate courts
apply an additional correlative standard in reviewing revocation orders. His statement of the
correlative standard is:



Remedy Is Reversal And Remand Or Rendition Unless Harmless Beyond
Reasonable Doubt For ALL Errors, Including Insufficient Evidence And Even If
Evidence Of Violation Is Sufficient.



He contends that cases should no longer be followed which hold that when one ground supports
a revocation order, appellate courts need not address other contentions. E.g., Flournoy v. State,
589 S.W.2d at 708 (Tex. Crim. App. 1979). He reasons that application of the harmless error
rule 81(b)(2) would not allow a reviewing court to assume that if the trial court were properly
"informed," it would exercise its discretion to revoke. The explanation continues that if review
reveals that the trial court relied on ten violations and only one of the violations could be sustained
by properly admitted evidence, the trial court being so "informed" quite likely would not revoke. 
Appellant argues that the trial judge should at least be given another opportunity to consider
alternatives to revocation provided by Tex. Code Crim. Proc. Ann. art. 42.12.

 Appellant quotes from Saunders v. State, 657 S.W.2d 817 (Tex. App.--Houston [1st
Dist.] 1983, no pet.), in which the court noted but rejected an argument similar to appellant's. 
Saunders was decided prior to the effective date of Tex. R. App. P. 81(b)(2). Although we have
noted appellant's explanation relating to the correlative standard that he would have us apply, we
decline to do so.

 The second condition of probation imposed on appellant provides he would "abstain
from the use of alcoholic beverages." The second amended motion to revoke probation, alleged
among several other violations that appellant "consumed an alcoholic beverage, to-wit: alcohol,"
on March 30, 1992. The trial court found that the evidence supported that alleged violation and
several others.

 In points of error nine and ten, appellant claims the evidence is insufficient to prove
he consumed an alcoholic beverage in violation of his conditions of probation. He argues that the
trial court abused its discretion in so finding and deprived him of both due process and due course
of law. A trial court's order revoking probation will not be reversed unless the trial court abused
its discretion in entering the order. Barnett v. State, 615 S.W.2d 220, 222 (Tex. Crim. App.
1981), appeal dism'd, 454 U.S. 806 (1981); Flournoy, 589 S.W.2d 707; Bolieu v. State, 779
S.W.2d 489, 491 (Tex. App.--Austin 1989, no pet.). In probation revocation proceedings, the
standard for reviewing sufficiency of the evidence supporting the trial court's order is proof by
a preponderance of the evidence. Forrest v. State, 805 S.W.2d 462 (Tex. Crim. App. 1991);
Cardona v. State, 605 S.W.2d 492, 493 (Tex. Crim. App. 1984); Scamardo v. State, 517 S.W.2d
293, 298 (Tex. Crim. App. 1974); Trcka v. State, 744 S.W.2d 677, 681 (Tex. App.--Austin 1988,
pet. ref'd). If one ground for revocation is supported by sufficient evidence, a reviewing court
need not address other contentions which are raised, since one probation violation will support
the trial court's order to revoke. Sanchez v. State, 603 S.W.2d 869 (Tex. Crim. App. 1980);
Moses v. State, 590 S.W.2d 469, 470 (Tex. Crim. App. 1979); Smith v. State, 790 S.W.2d 366
(Tex. App.--Houston [1st Dist.] 1990, pet. ref'd).

 During February and March of 1992, appellant did not report to Jacquie Tomhave,
his probation officer. On March 31, Tomhave called appellant and requested that he come to her
office. When appellant came into her office Tomhave asked Rusty Elliot, another probation
officer, to obtain a urine sample from appellant. Tomhave analyzed the urine sample with an
"Ontrack System" for analyzing urine. Tomhave told appellant that the test was positive for
alcohol and amphetamine. Appellant denied using either alcohol or amphetamine, but said he had
been taking Sudafed. Tomhave asked appellant to return to her office the next day. When
appellant came in the next day, April 1, appellant's urine sample was taken by probation officer
Gene Deal. Tomhave's test of this sample showed positive for amphetamine. When she told
appellant the test result, he told her he had snorted amphetamines on Monday, March 30. 
Appellant told Tomhave he had accompanied a friend of his who was reporting to the Travis
County jail, and the friend gave him one gram of amphetamine and placed some other property
in appellant's care. Appellant told Tomhave that he snorted the amphetamine and returned to his
work. He said that when co-workers seemed to notice he was acting in a strange manner, he went
out and got a fifth of vodka and drank it. Tomhave allowed appellant to leave her office, but told
him to report every Monday morning for a urine test. Appellant did not return to her office the
next two Monday mornings.

 Tomhave took the urine samples to the Department of Public Safety laboratory. 
Glenn Harrison, the toxicology section supervisor, received the samples. Harrison testified that
the urine sample taken on March 31 contained ethanol, which was compatible with appellant
having consumed vodka the day before. Diana Kapolka, a chemist in the Department of Public
Safety laboratory, testified she analyzed the urine samples and found them to contain amphetamine
and methamphetamine. She also testified that methamphetamine may metabolize so that the
sample would show amphetamine. The testimony of the experts negated the possibility that the
use of cold medicines such as NyQuil and Sudafed would give the results which they found.

 Appellant in his brief concedes, "[a]t best, the State proved only a single use of
alcohol and methamphetamine on March 30." However a single use of alcoholic beverage may
be sufficient to show a violation of probation. Appellant's attack on the sufficiency of the
evidence is in the nature of jury argument. The trial court as the finder of facts has already
resolved these matters. Among appellant's complaints, he urges the State alleged he consumed
"alcohol" not an "alcoholic beverage." He is wrong. The State alleged that appellant, "consumed
an alcoholic beverage, to-wit: alcohol." "[T]o-wit: alcohol" is mere surplusage to the allegation
that appellant consumed an alcoholic beverage. The condition of probation in this cause is not the
same as that in Bolieu, 779 S.W.2d at 489, where it was necessary to show the probationer made
a "habit" of using alcohol. The condition imposed in Bolieu was: "Avoid injurious and vicious
habits (including the use of narcotic or habit forming drugs and alcoholic beverages) . . ." The
full condition in this case was:



2. Avoid injurious or vicious habits; abstain from the use of alcoholic beverages;
abstain from the use of narcotic or habit forming drugs without a doctor's
prescription.



Evidence in this case shows that appellant was an alcoholic and that he committed the charged
offense while under the influence of alcohol. Another condition of probation was that appellant
attend Alcoholics Anonymous meetings on a weekly basis. The trial court imposed this condition,
it appears, with the intent that one use of an alcoholic beverage could constitute a violation of the
condition imposed.

 The trial court's finding that the appellant violated the condition that he "abstain
from the use of alcoholic beverages" by consuming an alcoholic beverage on March 30, 1992, is
supported by a preponderance of the evidence. The trial court did not abuse its discretion in
revoking probation on this ground. Appellant's points of error nine and ten are overruled.

 In his eleventh point of error, appellant urges that the trial court's finding was
against the great weight and preponderance of the evidence. Since we find the trial court's order
is supported by a preponderance of the evidence, point of error eleven is overruled.

 We will now discuss appellant's remaining points of error as they are concerned
with the trial court's finding that appellant used an alcoholic beverage. Appellant's points of error
one and two are concerned with grounds for revocation other than the drinking of vodka violation. 
Consideration of these points of error is unnecessary to the proper disposition of this case and we
find it unnecessary to dispose of them.

 In his third point of error appellant urges that the trial court erred in admitting
Tomhave's testimony that appellant told her that on March 30, he drank a fifth of vodka.
Appellant's trial objection was that Tomhave did not warn him before he made the statement as
she was required by Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979). That article applies
to statements of an accused resulting from custodial interrogation. Tomhave requested that
appellant come to her office on March 31, because he had not reported during the months of
February and March as required by conditions of probation. He reported, furnished a urine
sample and left Tomhave's office. He returned the next day at her request. When he was told
the results of the urine sample test, he voluntarily told Tomhave he had consumed the vodka
which masked the result of his use of methamphetamine. He left her office after his admission
and was not arrested until several days later.

 Was the appellant in custody when he made the statements to Tomhave? "The
ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement'
of the degree associated with a formal arrest. California v. Beheler, 463 U.S. 1121, 1125, 103
S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (1983)." Wicker v. State, 740 S.W.2d 779, 786 (Tex.
Crim. App. 1987). See also Oregon v. Mathiason, 429 U.S. 492 (1977); Shiflet v. State, 732
S.W.2d 622 (Tex. Crim. App. 1985). The circumstances in this case are much like those in
Wicker, 740 S.W.2d at 779, in which a defendant made unwarned statements to an employee of
the Texas Department of Human Resources after the defendant was requested to come to the
employee's office. There the Court of Criminal Appeals held that the defendant was not in
custody. We find the appellant was not in custody when he made the statement to Tomhave about
drinking vodka. Point of error three is overruled.

 In his fourth point of error, appellant asserts that the trial court erred in failing to
conduct a hearing to make findings of fact and conclusions of law as to the voluntariness of
appellant's unwarned oral statements to Tomhave. In view of our disposition of point of error
three, no error is shown. See Wicker v. State, 740 S.W.2d 779, 784 (Tex. Crim. App. 1987). 
Point of error four is overruled.

 Appellant complains in points of error five and six that the urinalysis results were
the product of evidence unlawfully obtained in violation of both federal and state constitutional
provisions. Since appellant admits his trial objections were insufficient, the error asserted was
not preserved for review and points of error five and six are overruled.

 In points of error seven and eight, appellant complains of the trial court's finding
that appellant violated several probation conditions; however we need to discuss only his
complaints as they relate to the use of alcohol violation. He argues that the trial court abused its
discretion and deprived him of due process and due course of law under the provisions of the
federal and state constitutions, because the condition that he would abstain from the use of
alcoholic beverages was "as applied to him, void, unconstitutionally vague and indefinite an
improper delegation, alteration or modification of the court imposed condition, and/or conflicted
with federal law."

 The condition that appellant "abstain from the use of alcoholic beverages," is not
statutory, but such a condition has been approved and found not to exceed the authority of a trial
court imposing such a condition. Flores v. State, 513 S.W.2d 66 (Tex. Crim. App. 1974);
Hernandez v. State, 704 S.W.2d 909 (Tex. App.--Waco 1986, no pet.); Baraias v. State, 682
S.W.2d 589 (Tex. App.--Waco 1984, pet. ref'd); Morris v. State, 658 S.W.2d 770, 773 (Tex.
App.--Beaumont 1983, no pet.). A trial judge is given considerable discretion in imposing
conditions of probation. Tex. Code Crim. Proc. Ann. art. 42.12, § 6; Washington v. McSpadden,
676 S.W.2d 420, 422 (Tex. Crim. App. 1984). This condition is not void and it is not
unconstitutionally vague or indefinite. Nothing in the record shows an improper delegation,
alteration, or modification of the court-imposed condition. This condition is not shown to conflict
with federal law. Points of error seven and eight are overruled.

 Appellant attacks his original conviction in three points of error. In points of error
twelve and thirteen appellant contends his conviction is void and that his federal and state
constitutional rights were violated because, "his guilty plea was involuntary, unknowing and
unintelligent and the court, after accepting the plea bargain which induced said plea, subsequently
violated said plea bargain." In point of error fourteen, which is argued in conjunction with points
twelve and thirteen, appellant asserts his "conviction is void for violation of Art. 26.13
V.A.C.C.P." Appellant complains that the plea bargain agreement was breached by probation
condition seventeen which provides, "The defendant shall not practice medicine during the term
of probation."

 The validity of an original conviction from which no appeal is taken ordinarily
cannot be raised on appeal from a revocation order. Whetstone v. State, 786 S.W.2d 361, 363
(Tex. Crim. App. 1990); Burrell v. State, 492 S.W.2d 482 (Tex. Crim. App. 1973); Hoskins v.
State, 425 S.W.2d 825 (Tex. Crim. App. 1968); Smola v. State, 736 S.W.2d 265 (Tex.
App.--Austin 1987, no pet.). Exceptions to this rule have been made where the error complained
of on the original conviction is a matter that can be attacked collaterally. Rabb v. State, 572
S.W.2d 718 (Tex. Crim. App. 1978); Dinnery v. State, 592 S.W.2d 343, 350 (Tex. Crim. App.
1980) (opinion on rehearing). Regardless of whether a collateral attack is proper in this case, we
will discuss appellant's contentions.

 Appellant and the State entered into a written plea bargain, a part of which
provided:



As part of this plea bargain the defendant agrees to voluntarily surrender his
license to practice medicine to the Texas Board of Medical Examiners. Any
reissuance of said license shall be pursuant to Article 4495b, Section 4.10 of the
Texas Civil Statutes and the determination if it and when such license is to be
reissued shall be within the discretion of the Texas State Board of Medical
Examiners.



After the appellant, who was represented by eminent retained counsel, entered his guilty plea but
before his plea was accepted by the trial court, evidence was offered followed by a lengthy
colloquy between the court, appellant, appellant's counsel and the prosecutor. Appellant made
a judicial confession and testified concerning the commission of the offense, his problem with
alcohol, and his prospects for serving probation if it were granted. A member of the family of
the victim testified. The district attorney summarized the plea bargain agreement. The trial court
inquired why the recommendation was being made. The district attorney offered his explanation. 
At the trial court's invitation, defense counsel made a statement concerning the circumstances of
the commission of the offense and requested the court to accept the plea bargain. This followed:



 THE COURT: Do you have anything you want to add?


 THE DEFENDANT: I agree with what is said there. I can't add anything
to it. I think it's fair.


 THE COURT: This is a plea bargaining agreement as stated by the District
Attorney?


 [DEFENSE COUNSEL]: It is a plea bargain agreement.


 Do you understand that this -- is this the agreement, as you
understand it, that has been laid out?


 THE DEFENDANT: Yes.


 [DEFENSE COUNSEL]: And that's what we have talked about and you
signed. Is that correct?


 THE DEFENDANT: Yes.


 [DEFENSE COUNSEL]: Do you understand it that way?


 THE DEFENDANT: Yes, sir.


 THE COURT: Do you understand that even though the District Attorney
makes an agreement like this, if I go along with it, that I'm not bound by that, that
I don't have to grant the Shock Probation Motion if it is filed? Do you understand
that?


 THE DEFENDANT: It was explained to me, yes.


 THE COURT: Do you understand further that if I do grant that Motion for
Shock Probation, if I go along with this and if the Motion is filed, that it would be
up to me as to what conditions of probation I would want to impose? Do you
understand that?


 THE DEFENDANT: I understand that.


 THE COURT: That I wouldn't be necessarily bound by just these
conditions. Do you understand?


 THE DEFENDANT: Yes, I do.


 THE COURT: These would merely be a recommendation by the District
Attorney. Do you understand?


 THE DEFENDANT: Yes.


 THE COURT: And if I did go along with that, if I wanted to impose some
community service restitution, that you would do some work and not get paid for
it, that I could do that?


 THE DEFENDANT: I understand that, yes.


 THE COURT: And all kind of different counseling for alcohol and drugs
and those kind of things, and that if I determine that you shouldn't practice
medicine during the term of probation, that I could put that in there. Do you
understand?


 THE DEFENDANT: Yes.


 THE COURT: Do you have any problem, Mr. [defense counsel] with any
of these things that I have mentioned.


 [DEFENSE COUNSEL]: No, Your Honor.


 THE COURT: Let me talk to the attorneys in chambers. This is such a
serious matter that I would just -- my mind is that you ought to be severely
punished for something like this, and I have just -- I'm having problems going
along with the plea bargaining agreement that is not as severe as I feel like you
ought to be punished. Let me talk to the attorneys in chambers.




IN OPEN COURT



 THE COURT: All right. I have conferred with the attorneys and have
considered this, and I have decided that I will go along reluctantly with this plea
bargaining agreement.


 The evidence having been heard, it is the judgment of the Court that you
are guilty of the offense of indecency with a child as charged in Paragraph One of
Count 2 of the indictment, and your punishment is assessed at confinement in the
Texas Department of Corrections for 10 years.


 Do you have anything to say why you should not be sentenced at this time?


 THE DEFENDANT: No, sir.


 THE COURT: All right. You having been found guilty of the offense of
indecency with a child, you are sentenced to serve a term of 10 years in the Texas
Department of Corrections.



 The trial court fully advised appellant of his right to appeal. Appellant after
conferring with his counsel signed a written waiver of appeal.

 On December 15, 1983, appellant appeared in the trial court represented by well
respected defense counsel and this occurred:



 THE COURT: I will call Cause No. 83-157-K, The State of Texas v.
Walter Pyron.


 [PROSECUTOR]: The State is ready on the Motion, Your Honor.


 [DEFENSE COUNSEL]: Ready, Judge.


 Your Honor, the Court will recall you heard this Motion before, and I have
nothing further in the way of evidence. Unless counsel has some reason, I believe
we have fully developed it, or if the Court would like anything further.


 THE COURT: Does the State have anything further?


 [PROSECUTOR]: No, sir.


 THE COURT: All right. I want to make an inquiry of counsel and the
Defendant. In the event that I decide to grant shock probation, what is your
position as to the right of the Court to determine what the conditions of probation
are, including whether the Defendant can practice medicine over the period of
probation and community restitution and things of that nature?


 [DEFENSE COUNSEL]: Well, let me make a fairly thorough statement
on that. I believe that the agreement that was had did encompass what the
conditions would be; but at this time, Your Honor, in an effort to resolve what has
been for me a very difficult thing, and I know for the State and the Court, to the
extent that the Court would want to go outside of what you may think we discussed
as conditions and impose other conditions, we will not make any objection to that
nor appeal anything or file any writ on that basis. Any right that we would have
on that we waive. I'm not exactly certain what those conditions were, and I
thought they were brought out in the evidence the last time, and I think I know
what the Court is inquiring about. There was that he would not practice medicine,
for example, for a year. Isn't that right? That is what we talked about at the time.


 Incidentally, I have here a letter which I think -- I don't want to forget
about, from the Board that, I believe, shows that he does not have his license.


 If what the Court is inquiring about is what is going to be our position if
you say longer than that or put on conditions that were discussed at the time the
plea was initially entered, we would waive any objection about that. Isn't that
correct, Doctor?


 THE DEFENDANT: That's correct.


 [DEFENSE COUNSEL]: With the full understanding of what our rights
may or may not be in that connection, we would have no objection.


 THE COURT: And that is your position, too?


 THE DEFENDANT: Yes, sir, I surrendered my license before we came
to court the last time, and I certainly would not have any differences with the
change.


 [DEFENSE COUNSEL]: This is a letter revoking his license, Judge. That
does it, does it not?


 THE COURT: Yes.


 [DEFENSE COUNSEL]: Now, anticipating what the Court may do, I do
want to say this, not by way of argument, but whatever conditions the Court were
to impose, I assume that I'm correct in believing that we could come back to
request a change in conditions, just as we could come back to request to be
released from probation. And it may be that we will be doing that sort of thing in
the future, but we will have no objection as to the imposition of any conditions that
the Court wants should it decide.


 Did you find in there what it was that was discussed?


 THE COURT: Yes, this is a transcript of the Plea of guilty in this case,
and on Page 26 --


 [DEFENSE COUNSEL]: You state that you could impose other --


 THE COURT: -- "Do you understand further that if I do grant that Motion
for Shock Probation, if I go along with this and if the Motion is filed, that it would
be up to me as to what conditions of probation I would want to impose? Do you
understand that?


 "[THE DEFENDANT]: I understand that.


 "THE COURT: That I wouldn't be necessarily bound by just these
conditions. Do you understand?


 "THE DEFENDANT: Yes, I do.


 "THE COURT: These would merely be a recommendation by the District
Attorney. Do you understand?


 "[THE DEFENDANT]: Yes.


 "THE COURT: And if I did go along with that, if I wanted to impose
some community service restitution, that you would do some work and not get paid
for it, that I could do that?


 "[THE DEFENDANT]: I understand that, yes.


 "THE COURT: And all kind of different counseling for alcohol and drugs
and those kind of things, and that if I determined that you shouldn't practice
medicine during the term of probation, that I could put that in there. Do you
understand?


 "[THE DEFENDANT]: Yes."


 [THE COURT]: Yes, that is what I was talking about.


 [DEFENSE COUNSEL]: Yeah, I recall. As the Court knows, I wasn't
here during that hearing, but I read the record, also, and I did recall there was a
discussion by you that you would consider other conditions.


 Again, to the extent that we would have any objection, we waive them at
this time. Is that right, Doctor?


 [THE DEFENDANT]: That's correct, yes, sir.



 The record demonstrates that condition seventeen, which provided the defendant
shall not practice medicine during his term of probation, was a part of the plea bargain that was
accepted by appellant and his trial counsel. It was a part of the plea bargain made prior to the
trial court's acceptance of the plea bargain. Tex. Code Crim. Proc. Ann. art. 26.13(a)(2) does
not require the trial court to accept or reject the plea bargain agreement before hearing evidence. 
Thi Van Le v. Perkins, 700 S.W.2d 768, 774 (Tex. App.--Austin 1985) (orig. proceeding),
approved sub nom Perkins v. Third Court of Appeals, 738 S.W.2d 276 (Tex. Crim. App. 1987). 
The record refutes appellant's argument that the plea bargain was changed and thus breached. He
agreed to the change from the written agreement before the trial court accepted the agreement. 
Moreover, appellant waived his appeal and for a number of years he did not complain about this
condition of probation. See Brown v. State, 508 S.W.2d 366, 368 (Tex. Crim. App. 1974). The
appellant has failed to demonstrate that the plea bargain was not kept and has failed to demonstrate
that he did not get that for which he bargained. The appellant has failed to show that his plea was
"involuntary, unknowing and unintelligent." Appellant's points of error twelve, thirteen, and
fourteen are overruled.

 The appellant has not shown that the trial court abused its discretion in revoking
probation. The order revoking probation is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Powers, Kidd and Dally*

Affirmed

Filed: March 30, 1994

Do Not Publish














* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).

APPENDIX




Statement of Points of Error



Point of Error No. One:  The Court denied appellant due process, U.S. Const., Amends V and
XIV, and abused its discretion by revoking upon and finding paragraphs VI and VII 'True'
because the condition allegedly violated was void, unconstitutionally vague and indefinite, and an
improper delegation, alteration or modification of the court-imposed condition.


Point of Error No. Two:  The Court denied appellant due course of law, Tex. Const., Art. I, sec.
19, and abused its discretion, by revoking upon and finding paragraphs VI and VII 'True' because
the condition allegedly violated was void, unconstitutionally vague and indefinite, and an improper
delegation, alteration or modification of the court-imposed condition.


Point of Error No. Three:  The Court erred in overruling appellant's objection under V.A.C.C.P.
38.22 to admission his alleged, unwarned, oral statement.


Point of Error No. Four:  The Court erred in not conducting a hearing on and entering findings
of fact and conclusions of law as to the voluntariness of appellant's alleged unwarned, oral
statement.


Point of Error No. Five:  The Court erred in considering the urinalysis results and appellant's
statement as they were products and fruit of an illegal search and seizure, U.S. Const., Amends
IV and XIV.


Point of Error No. Six:  The Court erred in considering the urinalysis results and appellant's
statement as they were products and fruit of an illegal search and seizure, Tex. Const., Art. I,
secs. 9 and 10.


Point of Error No. Seven:  The Court denied appellant due process, U.S. Const., Amends V and
XIV, and abused its discretion by revoking upon and finding paragraphs I, II, III, VI, VIII and
IX 'True' because the conditions allegedly violated were, as applied to him, void,
unconstitutionally vague and indefinite, an improper delegation, alteration or modification of the
court-imposed condition and/or conflicted with federal law.


Point of Error No. Eight:  The Court denied appellant due course of law, Tex. Const., Art. I, sec.
19, and abused its discretion by revoking upon and finding paragraphs I, II, III, VI, VIII and IX
'True' because the conditions allegedly violated were, as applied to him, void, unconstitutionally
vague and indefinite, an improper delegation, alteration or modification of the court-imposed
condition and/or conflicted with federal law.


Point of Error No. Nine:  The Court denied appellant due process, U.S. Const., Amends. V and
XIV, and abused its discretion by revoking upon and finding Paragraphs I, II, III, VI, VIII and
IX 'True' because the evidence was insufficient to prove violation of the court-imposed condition.


Point of Error No. Ten:  The Court denied appellant due course of law, Tex. Const., Art. I, sec.
19, and abused its discretion by revoking upon and finding paragraphs I, II, III, VI, VIII and IX
'True' because the evidence was insufficient to prove violation of the court-imposed condition.


Point of Error No. Eleven:  The Court's findings of 'True' as to paragraphs I-III and VI -IX are
against the great weight and preponderance of the credible evidence.




APPENDIX (Cont'd)




Point of Error No. Twelve:  Appellant's conviction is void because his plea of guilty upon which
it was rendered was involuntary and unknowing and the Court, after accepting the plea bargain
which induced said plea, subsequently violated said plea bargain, violating U.S. Const., Amends.
V and XIV.


Point of Error No. Thirteen:  Appellant's conviction is void because his plea of guilty upon which
it was rendered was involuntary and unknowing and the Court, after accepting the plea bargain
which induced said plea, subsequently violated said plea bargain, violating Tex. Const., Art. I,
sec. 19.


Point of Error No. Fourteen:  Appellant's conviction is void for violation of Art. 26.13,
V.A.C.C.P.