**In the Matter of J.S.**

No. 2–00–037–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 4, 2001.

Dean M. Swanda, Arlington, for appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Anne E. Swenson, and Karen Lynn, Assistant Criminal District Attorneys, Fort Worth, for appellee.

Panel F: DAY, LIVINGSTON, and DAUPHINOT, JJ.

## OPINION

LIVINGSTON, Justice.

J.S., a juvenile, appeals the trial court's judgment of delinquency. After a hearing before the court, the trial court found beyond a reasonable doubt that appellant engaged in delinquent conduct by committing indecency with L.Z., a child younger than fourteen years of age. On appeal, appellant generally complains of legal insufficiency of the evidence and evidentiary error. We affirm.

### FACTS

In its petition, the State alleged that on or about March 30, 1998, appellant engaged in delinquent conduct by intentionally, with the intent to arouse or gratify his sexual desire, engage in sexual contact by touching L.Z.'s anus, paragraph one, and by touching L.Z. with his penis, paragraph two.

On September 28, 1999, at the adjudication hearing, L.Z.'s mother, Beatrice, testified that her sister Sally and Sally's three sons, including J.S. who was fifteen or sixteen, moved in with her family in late 1997. Beatrice paid Sally to babysit K.Z., her youngest daughter, and to pick up and babysit L.Z. after school. L.Z. referred to Sally's sons as her cousins or her brothers while they were living in their home. Sally and her sons moved back to San Antonio the end of March 1998. L.Z. did not confide in Beatrice concerning any inappropriate behavior on J.S.'s part. In May 1998, Officer Jerry Hataway with the Arlington Police Department contacted Beatrice about the allegations of abuse.

Officer Hataway testified that he was assigned to investigate possible child abuse at the Arlington Young Texans Day Care, the day care used by Beatrice and her husband before Sally moved in with them. In connection with the investigation, L.Z. and K.Z. were interviewed by Glenda Wood, a child abuse interviewer with the Tarrant County District Attorney's Office. Wood told Hataway that L.Z. made an outcry statement to her concerning one of her brothers. Based on this information, and after reviewing the videotape of Wood's interview with L.Z., Hataway re-

ferred the case to Officer Darla Neese who compiled the information and filed the case with the D.A.'s Office.

Glenda Wood testified that she had been interviewing child abuse victims for about twenty years. During her interview with L.Z. concerning the allegations of abuse at the Arlington Young Texans Day Care, L.Z. told her that J.S. was home alone with her after school one day and he told her to get on the couch with him in the living room. L.Z. lay down with her back to J.S.'s front. J.S. rubbed her "butt" or "bottom" with his hand "on the crack and where she goes to the bathroom." L.Z. also said that she felt J.S.'s penis, his "pee," against her "butt" and that "it felt hard." The contact occurred over her clothes and L.Z. did not know if J.S. removed any of his clothes because she was not facing him. L.Z. told Wood that J.S. wanted her to promise that she would not tell anyone. L.Z. referred to J.S. as her cousin and, at times, as her brother, but she knew J.S. was Aunt Sally's child.

L.Z., who was eight years old at the time of trial, testified similarly concerning the events and demonstrated the relevant parts of the body with anatomically correct dolls. She stated that as she lay on the couch with J.S., he put one of his arms around her waist and she could feel his penis touching what she identified as her anus on the female doll. J.S. was "moving around" behind her for a short time. J.S. told her not to tell her mom or dad. J.S. did not remove any of L.Z.'s clothing or his own clothing. Although L.Z. felt "something" against her "bottom," she did not

see J.S.'s penis. She said that J.S. never did it again and that no one else had ever touched her like that.

Sally, J.S.'s mother, denied that J.S. was ever left at home alone with L.Z. and K.Z. J.S. did not testify.

During closing argument, the State conceded that the evidence was insufficient to sustain a finding of delinquent conduct under paragraph one of the petition. The trial court "denied" paragraph one, but found the evidence sufficient beyond a reasonable doubt to show that appellant engaged in sexual contact by touching L.Z. with his penis. The trial court entered a judgment of delinquency on September 30, 1999. On October 27, 1999, appellant filed a motion for new trial, which was overruled by operation of law.

At the disposition hearing, on November 12, 1999, the trial court placed appellant on probation for two years, subject to the terms and conditions of probation as specified. On November 23, 1999, appellant filed a motion to transfer jurisdiction to Bexar County, where he resided with his mother. On December 1, 1999, the trial court granted the motion and ordered the case transferred to Bexar County and ordered the Tarrant County District Clerk to forward the transcripts of the records and documents in the case. *See* TEX.FAM.CODE ANN. § 51.07(b) (Vernon 1996).[1] On December 23, 1999, appellant filed his notice of appeal with the Tarrant County District Clerk's Office.

## JURISDICTION

■ As a threshold issue, the State questions our jurisdiction to consider this

---

1. Section 51.07, entitled "Transfer to Another County," provides:

(a) When a child has been found to have engaged in delinquent conduct or conduct indicating a need for supervision under Section 54.03 of this code, the juvenile court, with the consent of the child and appropriate adult given in accordance with Section 51.09 of this code, may transfer the case and transcripts of records and documents to the juvenile court of the county where the child resides for disposition of the case under Section 54.04 of this code.

(b) When a child who is on probation moves with his family from one county to another, the juvenile court may transfer the case to the juvenile court in the county of the child's new residence if the transfer is in the best interest of the child. In all other cases of transfer, consent of the receiving court is required. The transferring court shall forward transcripts of records and documents in the case to the judge of the receiving court.

TEX.FAM.CODE ANN. § 51.07.

appeal. It contends that following the transfer, the Bexar County juvenile court became the trial court for purposes of perfecting an appeal, and appellant should have perfected the appeal by filing notice of appeal with the trial court clerk in Bexar County, not the Tarrant County District Clerk. We disagree.

A juvenile has the right to appeal an order or judgment of a district court with original jurisdiction to the court of appeals authorized to hear appeals for the particular district. *See* TEX. CONST. art. V, § 6; TEX.FAM.CODE ANN. § 56.01 (Vernon Supp. 2001); TEX.GOV'T CODE ANN. § 22.201 (Vernon 1988). This court has appellate jurisdiction over all cases over which Tarrant County district and county courts exercise original jurisdiction. Our appellate jurisdiction is thus derivative of the trial court's jurisdiction. The final judgment of delinquency and order of probation in this case were rendered in a cause over which the Tarrant County district court had original jurisdiction. The trial courts of Tarrant County do not fall within the Fourth District. *See* TEX.GOV'T CODE ANN. § 22.201(c), (e). Furthermore, the case was transferred to Bexar County only for the purpose of supervising appellant's probation after final judgment and disposition of the case. *See* TEX.FAM.CODE ANN. § 51.07(b); *compare Peacock v. Travelers Property Cas. Ins. Co.*, 16 S.W.3d 445, 447 (Tex. App.—Waco 2000, no pet.) (involving transfer of cases by the Supreme Court for purposes of appeal). Because the appeal arises from the final judgment of a trial court within our district, appellant's notice of appeal was properly filed with the Tarrant County District Clerk's Office, and we have appellate jurisdiction over the cause.

### DISCUSSION

In his first issue, appellant contends the evidence is legally insufficient to support a finding of delinquent conduct because the touching of L.Z.'s buttocks with his penis, although offensive, does not constitute "sexual contact" as defined in the penal code. "Sexual contact" is defined as any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person. TEX.PENAL CODE ANN. § 21.01(2) (Vernon 1994).

■ In a juvenile proceeding, the burden at trial is on the State to prove beyond a reasonable doubt that the juvenile engaged in delinquent conduct. TEX.FAM. CODE ANN. § 54.03(f) (Vernon Supp.2001). Appellant contends that we should apply the *Jackson v. Virginia* standard applicable in criminal cases in reviewing the legal sufficiency of the evidence to show the commission of the offense as do many of our sister courts.[2] The State, on the other hand, raises three reasons against adopting the criminal standard in this context.

■ First, the State urges that "utilization of the criminal legal standard of review is contrary to the plain language" of section 56.01(a) and (b) of the family code. TEX.FAM.CODE ANN. § 56.01(a)-(b). Section 56.01(a) provides: "An appeal from an order of a juvenile court is to a court of appeals and the case may be carried to the Texas Supreme Court by writ of error or upon certificate, as in civil cases generally." *Id.* § 56.01(a). Section 56.01(b) provides in relevant part: "The requirements governing an appeal are as in civil cases generally." *Id.* § 56.01(b). According to the State, these provisions require us to

2. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *In re C.C.*, 13 S.W.3d 854, 858 (Tex.App.—Austin 2000, no pet.) (op. on reh'g) (applying criminal standard of review in reviewing challenges to the legal sufficiency of the evidence during the adjudication phase in juvenile cases); *In re T.K.E.*, 5 S.W.3d 782, 784–85 (Tex.App.—San Antonio 1999, no pet.) (same); *In re B.M.*, 1 S.W.3d 204, 206 (Tex. App.—Tyler 1999, no pet.) (same); *In re C.P.*, 998 S.W.2d 703, 707–08 (Tex.App.—Waco 1999, no pet.) (same); *In re A.S.*, 954 S.W.2d 855, 858 (Tex.App.—El Paso 1997, no pet.) (same). *But see In re J.K.R.*, 986 S.W.2d 278, 281 (Tex.App.—Eastland 1998, pet. denied) (applying civil "no evidence" standard).

apply the civil review standard to legal sufficiency of the evidence challenges. However, the statutory provisions do not expressly state that the civil standard of review is applicable to a review of the legal sufficiency of the evidence in a juvenile appeal nor has the supreme court required application of the civil standard under section 56.01(a) or (b).

The State also cites this court to our opinion in *In re O.S.S.,* 931 S.W.2d 42 (Tex.App.—Fort Worth 1996, writ denied), for the proposition that the civil standard applies. That case, however, did not involve the issue before us. In *O.S.S.,* we applied the rules governing civil appeals in our determination of whether the juvenile appellant's notice of appeal was timely filed. *Id.* at 44.

Secondly, the State points out that we are bound by precedent to apply the civil standard of review and that the standard of proof at trial is not dispositive of the standard of review on appeal. *See In re M.R.,* 846 S.W.2d 97, 99–100 (Tex.App.— Fort Worth 1992), *writ denied,* 858 S.W.2d 365 (Tex.1993), *cert. denied,* 510 U.S. 1078, 114 S.Ct. 894, 127 L.Ed.2d 87 (1994); *Meadows v. Green,* 524 S.W.2d 509, 510 (Tex.1975). While this court has historically applied the civil "no evidence" standard in reviewing challenges to the legal sufficiency of the evidence to support a finding of delinquent conduct in a juvenile proceeding, we now believe the better approach is to apply the *Jackson* standard. *See In re M.R.,* 846 S.W.2d at 99–100. Given the fact that the State carries the same burden of proof in a juvenile proceeding as it does in an adult criminal case to show that the juvenile committed a penal offense and the quasi-criminal aspect inherent to juvenile proceedings, it seems more appropriate to apply the more stringent criminal standard of review to challenges to the legal sufficiency of the evidence to establish the commission of the offense in the adjudication phase. *In re*

*T.K.E.,* 5 S.W.3d at 784; *In re E.Q.,* 839 S.W.2d 144, 146 (Tex.App.—Austin 1992, no writ).[3]

Finally, the State contends application of the more stringent criminal standard is not favorable to the juvenile appellant and that Texas courts have an "unquestionable right to give more protection to juveniles than is required by the U.S. Constitution." This argument is not persuasive in light of our discussion above. We, therefore, apply the *Jackson* standard in determining whether the evidence is legally sufficient to show appellant engaged in delinquent conduct as alleged in the State's petition.

■■■ Under this standard, we view the evidence in the light most favorable to the State and determine whether, based on that evidence and any reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789. Applying this standard of review, we conclude the evidence in this case is sufficient to show beyond a reasonable doubt that appellant touched L.Z.'s anus with his penis with the intent to arouse or gratify his own sexual desire. Sexual contact may be committed even though the victim is fully clothed at the time of the sexual contact. *Guia v. State,* 723 S.W.2d 763, 766 (Tex.App.—Dallas 1986, pet. ref'd). L.Z. referred to her buttocks and anus as her "butt" or "bottom," indicated that J.S. rubbed her "butt" or "bottom" with his hand and penis "on the crack and where she goes to the bathroom," and demonstrated the parts of their bodies that came into contact with anatomically correct dolls. On the basis of this testimony, the trial court could have reasonably determined that appellant's hand and penis contacted a part of L.Z.'s body within the meaning of the statute.

■■■ Even assuming appellant's argument has merit and that the evidence, at

---

**3.** Our application of the *Jackson* standard is limited to challenges to the legal sufficiency of

the evidence to show commission of the alleged offense in the adjudication phase.

best, shows his penis touched L.Z.'s buttocks and that the statutory definition of sexual contact contemplates that sexual contact occurs when the accused touches the victim's anus, breasts, or genitals, and not vice versa, the evidence is sufficient to sustain a finding of delinquency. By rubbing L.Z.'s buttocks with his penis, he engaged in sexual contact. *See, e.g., Jacquez v. State*, 579 S.W.2d 247, 249 (Tex. Crim.App. [Panel Op.] 1979). We overrule issue one.

In his second issue, appellant contends L.Z.'s outcry statement to Wood was inadmissible because it was hearsay and bolstering and was not shown to be reliable and because the State did not give him notice of outcry as required by section 54.031 of the family code. Tex.Fam.Code Ann. § 54.031(c)(1)-(2) (Vernon 1996).

█ The statute requires the State to notify each party of its intent to introduce evidence of a child victim's outcry statement. *Id.* § 54.031(c)(1). Here, the State mailed the notice of outcry on October 15, 1998 to Rosie Garcia, appellant's aunt, at 4619 Pecan Grove Drive, San Antonio, Texas, based on information from appellant's grandmother that appellant was residing with Garcia and that Garcia was appellant's guardian at the time. At trial, appellant's attorney complained that she was not served with the notice of outcry. However, at the time notice was sent by the State, counsel was not representing appellant. Thus, notice to Garcia, appellant's guardian at the time, was proper.

█ Also under this point, appellant contends the testimony concerning L.Z.'s outcry was inadmissible because the trial court did not conduct a preliminary hearing to determine the reliability of L.Z.'s statements as required by section 54.031(c)(2). *Id.* § 54.031(c)(2). However, in a nonjury trial, we presume the trial court made the required finding of reliability upon proper objection. *See, e.g., Nolen v. State*, 872 S.W.2d 807, 812 (Tex.App.—Fort Worth 1994), *pet. ref'd*, 897 S.W.2d

789 (Tex.Crim.App.1995). Thus, assuming appellant's hearsay objection preserved the issue for our review, the fact that the trial court made a finding of reliability can be implied from the record by the trial court's overruling of appellant's objection and holding the testimony admissible. *See e.g., id.; Gabriel v. State*, 973 S.W.2d 715, 718–19 (Tex.App.—Waco 1998, no pet.).

█ Appellant also raises a "bolstering" complaint under this issue. His hearsay objection at trial, however, did not preserve this complaint for appellate review. *See Matz v. State*, 21 S.W.3d 911, 913 n. 2 (Tex.App.—Fort Worth 2000, pet. ref'd) (op. on remand). We overrule issue two.

█ In his third issue, appellant claims the trial court erred by permitting Officer Hataway to identify him as the suspect based upon information obtained from Glenda Wood and by admitting Hataway's testimony over his hearsay objection. During the State's direct examination of Hataway, he testified that Wood told him that L.Z. made an outcry against someone other than Thomas Sharp, the owner of the Arlington Young Texans Day Care. The following exchange occurred:

[PROSECUTOR]: Knowing that the outcry involved someone other than Thomas—well, who was the suspect in the case?

[HATAWAY]: I believe she referred to him as a brother.

[DEFENSE ATTORNEY]: Objection, Your Honor: Hearsay.

THE COURT: Sustained.

[PROSECUTOR]: What is the name of the person you developed as a suspect in that case?

[DEFENSE ATTORNEY]: Objection, Your Honor.

THE COURT: Overruled.

[PROSECUTOR]: What was the name of the person that you developed as a suspect in that case?

[HATAWAY]: The person turned out to be [appellant].

Appellant argues that Hataway's testimony regarding what Wood told him is hearsay and should not have been admitted over his objection. "Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted. Tex.R.Evid. 801(d). The State contends Hataway's testimony is not hearsay because it was not introduced for the truth of the matter asserted, but to explain how the officer came to suspect appellant.

It is permissible for an officer to testify that he was acting in response to information received. *Jones v. State*, 843 S.W.2d 487, 499 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993); *Thornton v. State*, 994 S.W.2d 845, 854 (Tex.App.—Fort Worth 1999, pet. ref'd). Here, Hataway was restricted by the trial court from relating Wood's statement that L.Z. reported that "a brother" assaulted her. However, his subsequent testimony that he developed appellant as the suspect in the case in response to information received by Wood was offered, not for the truth, but to show why Hataway pursued an investigation into the allegation of abuse and how appellant became a suspect in the case. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim.App.), *cert. denied*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). As such, the testimony was not impermissible hearsay, and the trial court properly overruled appellant's objection. We overrule issue three.

In appellant's fourth issue, he requests that in the event we reverse the judgment of delinquency, we also reverse the order of probation. However, because we have overruled appellant's other points on appeal, we need not address this issue. We overrule point four.

We affirm the trial court's judgment.